# Third District Court of Appeal

## State of Florida

Opinion filed November 08, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-1977
Lower Tribunal No. 14-8053
_____

**Marcus Molina,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal under Florida Rule of Appellate Procedure 9.141(b)(2) from the Circuit Court for Miami-Dade County, Ellen Sue Venzer, Judge.

Marcus Molina, in proper person.

Pamela Jo Bondi, Attorney General, for appellee.

Before ROTHENBERG, C.J., and FERNANDEZ and LUCK, JJ.

ROTHENBERG, C.J.

Marcus Molina ("the defendant") appeals the trial court's order denying his motion for postconviction relief in which he raised two grounds of ineffective assistance of trial counsel: (1) the failure of his trial counsel to request a presentence investigation prior to the imposition of sentence; and (2) the failure of his trial counsel to correct the plea agreement the defendant signed, which the defendant claims does not reflect the terms his lawyer had told the defendant he would be accepting pursuant to the negotiated plea. We affirm.

The record reflects that after sexually assaulting his stepdaughter on numerous occasions over a two-year period beginning when his stepdaughter was approximately thirteen years old, the defendant, accompanied by his pastor, turned himself in to the police and confessed to committing the following sexual acts upon the victim: (1) sucking the victim's breasts, performing oral sex (his mouth to her vagina) on the victim, and digitally penetrating the victim's vagina at least ten times; and (2) having penile/vaginal intercourse with the victim at least twenty times. Upon making these admissions, the defendant was arrested and charged with thirty counts of lewd and lascivious battery and thirty counts of lewd and lascivious molestation. Thereafter, the State filed an information charging the defendant with seven counts of sexual activity with a child by a person with familial or custodial authority, first degree felonies, each punishable up to thirty years in prison.

2

Based on negotiations with the State, the State and the defendant agreed that the State would file an amended information charging the defendant with seven counts of aggravated child abuse, rather than seven counts of sexual activity with a child by a person with familial or custodial authority, so that the defendant would not be designated a sexual predator; and the defendant would plead guilty to the seven counts of aggravated child abuse, be sentenced to ten years in prison followed by ten years of probation, and as a special condition of probation, the defendant would abide by all of the conditions specially identified in a separate plea agreement signed by the defendant. The defendant accepted these terms, signed the written plea agreement, and after being fully colloquied by the trial court, pled guilty to the amended information, and was sentenced.

**The Defendant's Postconviction Claims**

A. <u>**Failure to request a presentence investigation**</u>

The defendant contends that his trial counsel provided ineffective assistance of counsel by not requiring the trial court to order and consider a presentence investigation ("PSI") prior to accepting the defendant's negotiated plea. The defendant further asserts that a PSI "may well have contained a recommendation for a non-incarcerative sanction – which could have provided the trial court with a legitimate basis to depart from the plea-agreement." Although we agree with the defendant that, as a first-time felony offender, he was entitled to have a PSI

3

conducted prior to the imposition of sentence, see Fla. R. Crim. P. 3.170(a); Hardwick v. State, 630 So. 2d 1212, 1215 (Fla. 5th DCA 1994), we conclude that the defendant has failed to allege and demonstrate that his trial counsel's failure to request a PSI resulted in any prejudice to him, as required under Strickland v. Washington, 466 U.S. 668, 687 (1984).

First, we note that this was a negotiated plea, and the defendant received the sentence he specifically negotiated for with the State. The record reflects that prior to entering his plea, the defendant was facing the possibility of a sentence totaling 210 years of incarceration for committing seven separate acts of sexual activity with a child by a person with familial or custodial authority. Each separately charged count carried a maximum sentence of thirty years in prison and the requirement that the defendant, if convicted, must be designated a sexual offender (sexual predator), which would have required that he register as such and have to comply with the numerous lifetime restrictions associated with that designation.

However, based on the negotiations between defense counsel and the State, the State agreed to reduce the charges to seven counts of aggravated child abuse and the imposition of a sentence of ten years of incarceration followed by ten years of probation with the special conditions listed in the written plea agreement. The agreed-upon resolution of the case was based on the State's desire to shield the child victim from the further trauma of a deposition and testifying at a trial; the

4

State's consideration of the mitigation evidence presented by defense counsel and a report provided by Dr. Sczechowicz; and the defendant's main concern, which was that he did not want to be designated as a sexual predator.

Second, the mitigation evidence the defendant claims may have led to the imposition of a lesser sentence, had a PSI been conducted, was presented to the State and to the trial court, and was already considered by the State and the trial court. For example, the plea transcript reflects that the defendant wrote an eight-page letter, which was presented to the trial court at sentencing and which both the State and the trial court read and considered. After reading the letter, the trial court commented on its contents: that the defendant had turned himself in to the police, served this country with distinction, had no prior criminal record, and believed he had been a good father. The trial court, however, noted that the victim was "a little child" whose childhood was taken away from her and that the defendant's actions had changed the victim's life forever.

Based on this record, the defendant has failed to show that there exists a reasonable probability that if a PSI had been prepared, then his sentence would have been further mitigated, especially because this was a State-offered plea and the trial court had no authority to reduce the charges to aggravated child abuse to avoid a sexual predator classification, which was the defendant's main concern. This was a negotiated plea, which the defendant agreed was in his best interest, and

it was offered in part, based, on the mitigating factors presented by the defendant and considered by the State. Thus, as in Ortiz v. State, 42 Fla. L. Weekly D1809, D1810 (Fla. 3d DCA Aug. 16, 2017) (finding no prejudice by the failure of defense counsel to request a PSI or to investigate and introduce mitigating evidence where Ortiz was sentenced pursuant to a negotiated plea rather than pursuant to an open plea to the court, and Ortiz was given exactly what he bargained for), and Callaway v. State, 202 So. 3d 901, 905 (Fla. 3d DCA 2016) (finding no "prejudice flowing from the failure to request a presentence investigation where Callaway was sentenced according to a plea agreement he bargained for, rather than as a result of a trial or an open plea to the court and a sentencing hearing where the trial court is asked to consider aggravating and mitigating circumstances when determining what sentence to impose after a finding of guilt"), we find no prejudice.

**B. Failure to seek correction of the plea agreement**

The defendant claims that he accepted the State's offered plea of ten years' incarceration followed by ten years of probation based on his trial counsel's representation that the defendant would not be designated as a sexual offender, have to register as a sexual offender, or be subject to any sexual offender related conditions while on probation. Despite these representations, after the defendant began serving his sentence, he discovered that his probation includes twenty-six

conditions that are specifically related to sexual offenders. The defendant therefore claims that his trial counsel provided ineffective assistance of counsel by failing to seek a correction of the terms of the defendant's probation to reflect the bargained-for conditions prior to the defendant entering his plea of guilty before the trial court.

We agree with the trial court that this claim is conclusively refuted by the record and without merit. Unlike most pleas, this plea was accompanied by a very detailed written plea agreement, which set forth all of the conditions both the defendant and the State were agreeing to. It identified the individual counts and charges the defendant was pleading guilty to and the sentence that would be imposed. When addressing the probationary portion of the sentence, the written plea agreement carefully and fully listed each of the additional conditions the defendant must comply with in addition to the conditions of probation enumerated in the probation order.

Paragraphs 2 and 3 of the plea agreement specifically provide that as a special condition of probation the defendant must enter, actively participate in, and successfully complete a Mentally Disordered Sexual Offender Treatment Program. Paragraphs 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, and 15 further explain the requirements the defendant must satisfy specific to the Mentally Disordered Sexual Offender Treatment Program he must attend and successfully complete, and the

consequences for failing to do so. Many of the other conditions spelled out within the agreement are also sexual offender related conditions. For example, paragraph 20 prohibits the defendant from residing in a setting where minors reside, paragraph 22 prohibits the defendant from dating or living with persons who have (or have custody of) minor children, paragraph 23 prohibits the defendant from having unsupervised contact with minors, and paragraph 24 prohibits the defendant from teaching in public and private schools. And, importantly, unlike a designation as a sexual predator, which imposes these conditions for life, the conditions the defendant agreed to only extend for the duration of his probation (ten years).

The plea agreement and the plea colloquy transcript reflect that the defendant acknowledged that he understood and was accepting these conditions. Paragraph 35 of the written plea agreement states: "The execution of this plea agreement by the defendant constitutes an understanding, acknowledgment and agreement to the special conditions of probation as mentioned herein, in addition to the standard terms and conditions of probation appearing on the 'Terms and Conditions of Probation' form." The defendant initialed the page containing paragraph 34 and each page before it where the special conditions are identified.

On the final page of the plea agreement, paragraph 39 provides as follows:

> Having read the above-mentioned terms of this plea agreement, and having been advised by my counsel, Derek Lewis, Esq., I, MARCOS

MOLINA, freely and voluntarily enter into this plea agreement and agree to abide by all terms and conditions of this plea agreement, and agree that failure to comply with any terms or conditions within this agreement constitutes a violation of probation and subjects me to be sentenced to the statutory maximum penalties provided by law for the crimes for which I am now pleading guilty.

Just below this paragraph it states "This agreement is entered into freely and voluntarily on this 9th day of July, 2015," followed by the defendant's signature. The written plea agreement also contains the signatures of the Assistant State Attorney and the defendant's trial counsel and a statement and signature by the trial judge stating, "The Court, having reviewed this plea agreement with the defendant and conducted a plea colloquy with the defendant hereby ratifies the agreement and will sentence the defendant in accord with it."

In addition to the written plea agreement signed by the defendant, which lists each and every one of the special conditions the defendant was agreeing to pursuant to his plea, the Order of Probation signed by the defendant states that the conditions of probation had been explained to the defendant and that he agreed to abide by them. The Order of Probation listed as a special condition of probation that the defendant must comply with the written plea agreement.

During the trial court's plea colloquy of the defendant, the trial court specifically went over the written plea agreement with the defendant to make sure that he had signed the written plea agreement freely and voluntarily and with a full understanding of the conditions contained therein.

9

THE COURT:  I'm going to show you a five-page plea agreement, which purports to have your initials on each of the pages, and your signature on page five, and I am going to ask you if you've signed this document.
Can you see that?

THE DEFENDANT: Yes, ma'am.  I see that.

THE COURT:  And do you intend to be bound by this document?

THE DEFENDANT: Yes, ma'am.

THE COURT:  Is there anything in the plea agreement that you did not understand?

THE DEFENDANT: No, ma'am.  I understood everything.

. . . .

THE COURT:  . . .  Are you satisfied with the services of your attorney?

THE DEFENDANT: Yes, ma'am.

THE COURT:  Have you had enough time to talk to him?

THE DEFENDANT:  Yes, ma'am, I did.

THE COURT:  Did he explain the plea to you?

THE DEFENDANT: Yes, ma'am, he did.

THE COURT: He answered all of your questions?

THE DEFENDANT: Yes, ma'am, he did.

During the plea colloquy, the Assistant State Attorney also explained that the

10

State had agreed to file an amended information (charging the defendant with aggravated child abuse rather than with having sexual activity with a child by a person with familial or custodial authority) to avoid the requirement that the defendant register as a sexual predator, and that although he was not being placed on sexual offender probation, the defendant was still going to be required to abide by certain sexual offender-related probation special conditions as spelled out in the written plea agreement. Specifically, the State noted that the written plea agreement required that the defendant undergo an MDSO (Mentally Disordered Sexual Offender) evaluation, receive treatment by Dr. Sczechowicz, and have no unsupervised contact with minors.

The record, therefore, conclusively refutes the defendant's claim that the sentence imposed differed from what he agreed to accept and supports the trial court's finding that the defendant's trial counsel did not provide ineffective assistance of counsel by failing to seek correction of the written plea agreement to reflect the conditions agreed to by the defendant.

Affirmed.